1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11  DR. JUAN BRIBIESCA, M.D., C.C.P.,      Case No.:  3:16-cv-01225-BEN-WVG
12                            Plaintiff,
                                          **ORDER GRANTING MOTIONS TO**
13  v.                                    **DISMISS AND DISMISSING CASE**
                                          **FOR LACK OF JURISDICTION**
14  PROCOPIO, CORY, HARGREAVES,
    AND SAVITCH, LLP, et al.,
15
                            Defendants.
16

17

18

19        Plaintiff Dr. Juan Bribiesca ("Plaintiff" or "Bribiesca"), proceeding pro se, filed a

20  complaint on the basis of federal question jurisdiction under the Racketeering and

21  Corrupt Organizations ("RICO") Act of 1970 against twenty-seven (27) defendants

22  related to events that occurred at Plaintiff's former place of employment, which he has

23  already litigated to final judgment in state court.  (Compl., ECF No. 1.)  Presently before

24  the Court are nine (9) motions to dismiss:

25        (1)    Motion to Dismiss for failure to state a claim under Federal Rule of Civil

26               Procedure 12(b)(6), filed by Defendants Chris Van Gorder; Gary Fybel; Lisa

27               Thakur; Brad Ellis; Scripps Health dba Scripps Memorial Hospital, La Jolla;

28               John Spinosa, M.D.; Richard Unger, M.D.; Irma Flores; Steve Peterson; and

                                          1

Aimee Dovidio [hereinafter "Scripps Defendants"] (Scripps MTD, ECF No. 5);

(2)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(6), and 41(b), filed by Defendant The Honorable Randa Trapp, Judge of the Superior Court of California, County of San Diego (J. Trapp MTD, ECF No. 10);

(3)     Amended Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Mark Kalish, M.D. (Kalish Am. MTD, ECF No. 11);

(4)     Amended Motion to Strike Plaintiff's Complaint under California's anti-SLAPP statute, filed by Defendant Mark Kalish, M.D. (Kalish Am. Mot. to Strike, ECF No. 12);

(5)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants County of San Diego, Sheriff William Gore, and Larry Trapp [hereinafter "County Defendants"] (County MTD, ECF No. 13);

(6)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants Procopio, Cory, Hargreaves, & Savitch, LLP; Timothy Salter; and Paul Tyrell [hereinafter the "Procopio Defendants"]; Pacific Perfusion, Inc.; Richard Julien; and Holly Colavin [hereinafter the "PPI Defendants"] (Procopio & PPI MTD, ECF No. 15);

(7)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendant Alexander S. Giritsky, M.D. (Giritsky MTD, ECF No. 21);

(8)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants Michael Meenen and Razorback Perfusion, Inc. (Meenen MTD, ECF No. 23); and

(9)     Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendant Kelly Brinkman (Brinkman MTD, ECF No. 44).

Plaintiff filed an untimely combined opposition to the motions filed by the Scripps Defendants, Kalish, The Honorable Randa Trapp, the County Defendants, the Procopio and PPI Defendants, and Giritsky.  (Comb. Opp'n, ECF No. 24.)  Two days later, Plaintiff filed a "Corrected Combined Opposition."  (Corr. Comb. Opp'n, ECF No. 27.)[1] Both of Plaintiff's opposition briefs exceed eighty (80) pages, despite the Local Rules requiring that opposition briefs must not exceed twenty-five (25) pages without leave of Court.  *See* CivLR 7.1(h).  Plaintiff did not seek leave of Court to file the excess pages. He separately filed an opposition to Defendants Meenen and Razorback Perfusion's motion (Meenen Opp'n, ECF No. 36.), and later, Objections and a Motion to Strike Exhibits from Meenen and Razorback Perfusion's motion (ECF No. 43).  He also filed an opposition to Defendant Brinkman's motion to dismiss.  (ECF No. 45.)

Defendants filed replies.  (Scripps Reply, ECF No. 29; Giritsky Reply, ECF No. 30; J. Trapp Reply, ECF No. 31; Kalish Am. MTD Reply, ECF No. 32; Kalish Am. Mot. to Strike Reply, ECF No. 33; Procopio & PPI Reply, ECF No. 34; County Reply, ECF No. 35; Meenen Reply, ECF No. 40; Brinkman Reply, ECF No. 46.)

---

[1] In connection with Plaintiff's Corrected Combined Opposition, he filed a Request for Judicial Notice.  (ECF No. 28.)  He asks the Court to take judicial notice of photocopies of diplomas and certificates of completion for educational courses from the 1970s and 1980s.  Plaintiff proffers these documents in response to the Procopio and PPI Defendants' statement in its motion to dismiss that Plaintiff is not a medical doctor.  To take judicial notice of a fact, the fact must "not [be] subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  These photocopied documents are subject to reasonable dispute.  For instance, the Court knows nothing about the schools or organizations that issued these documents and what they purport to stand for.  Therefore, the Court **DENIES** Plaintiff's Request for Judicial Notice.

1    For the following reasons, the Court **GRANTS** the motions to dismiss and

2    **DISMISSES** the complaint for lack of subject matter jurisdiction.

3    <center>**BACKGROUND**[2]</center>

4    Plaintiff Dr. Juan Bribiesca practiced at Defendant Scripps Memorial Hospital in

5    La Jolla ("Scripps La Jolla") as a perfusionist from 1990 until April 2009.  (Compl. ¶¶

6    32, 34.)  A perfusionist is a member of the cardiothoracic surgical team who operates the

7    heart and lung machine during open heart surgery.  (*Id.* ¶ 32.)  From 1990 until 2003,

8    Bribiesca worked as an independent contractor at Scripps La Jolla.  (*Id.* ¶ 35.)  From

9    2003 to 2008, Plaintiff performed his work through La Jolla Perfusion, a partnership that

10   he had formed with Defendants Richard Julien and Holly Colavin, pursuant to a five-year

11   contract between La Jolla Perfusion and Scripps La Jolla.  (*Id.* ¶ 37.)  La Jolla Perfusion

12   was the combination of Julien and Colavin's partnership, Defendant Pacific Perfusion,

13   and Bribiesca's business, J.B. Coastal, Inc., which he had incorporated in 2003.  (Compl.

14   ¶¶ 36-37.)  Colavin withdrew from La Jolla Perfusion at the end of 2008, leaving

15   Bribiesca and Julien as equal co-owners.  (*Id.* ¶ 49.)

16   La Jolla Perfusion's contract with Scripps La Jolla ended in 2008, thereafter the

17   parties began operating under a month-to-month contract.  (*Id.* ¶ 38.)  In early 2009,

18   Bribiesca and Julien began negotiations with Scripps La Jolla to enter into a longer term

19   contract.  (*Id.* ¶ 50.)  Scripps La Jolla's Vice President of Operations, Defendant Lisa

20   Thakur, represented the hospital in the negotiations.  (*Id.* ¶ 51.)  During negotiations,

21   Thakur mentioned complaints she had heard from two La Jolla Perfusion subcontractors,

22   Defendants Michael Meenen and Kelly Brinkman.  (*Id.* ¶ 54.)  Bribiesca and Julien

23   assured Thakur that they would address the complaints.  (*Id.* ¶ 57.)  Bribiesca and Julien

24   then met with Meenen and Brinkman.  (*Id.* ¶ 58.)  Meenen and Brinkman asked for a

26
27   [2] The Court is not making any findings of fact, but rather summarizing the relevant
     allegations of the Complaint and, where applicable, matters of judicial notice for
28   purposes of evaluating Defendants' motions.

<center>4</center>

higher salary and a partnership interest, but Bribiesca and Julien explained that they could not negotiate those issues until La Jolla Perfusion had a long term contract in place with Scripps La Jolla.  (*Id.*)  The parties left the meeting understanding that the personnel issues within La Jolla Perfusion would be placed on hold pending completion of the contract negotiation with Scripps La Jolla.  (*Id.* ¶ 59.)

Subsequently, Thakur and Julien allegedly schemed to "lock out" Bribiesca from La Jolla Perfusion's contract opportunity.  (*Id.* ¶ 60, 63.)  Julien approached Colavin, Meenen, and Brinkman about starting a new partnership to take over La Jolla Perfusion's contract with Scripps La Jolla.  (*Id.* ¶ 61.)  Plaintiff alleges that Thakur suggested, and Julien agreed, that Meenen and Brinkman should fabricate false complaints about Bribiesca.  (*Id.* ¶¶ 62-64.)  Julien and Brinkman thereafter manufactured false statements about Bribiesca, and Julien provided the false statements to Thakur in mid April 2009.  (*Id.* ¶¶ 65-67.)

Julien and Thakur agreed that Julien and Colavin, who had already left La Jolla Perfusion (*id.* ¶ 49), would dissolve La Jolla Perfusion without Bribiesca's knowledge or consent.  (*Id.* ¶ 68.)  Defendant law firm Procopio, Cory, Hargreaves, and Savitch LLP ("Procopio") and one of its partners, Defendant Timothy Salter, advised Julien and Colavin about the "lock out" plan.  (*Id.* ¶ 69.)  Plaintiff alleges that Procopio and Salter had previously represented Bribiesca in a medical malpractice insurance dispute in the mid 1990s and thereafter continued to perform various legal work for Bribiesca, Julien, Colavin, and La Jolla Perfusion.  (*Id.* ¶¶ 39, 43.)

In mid April 2009, Colavin and Julien organized a sham meeting to vote out Bribiesca without his notice.  (*Id.* ¶ 70.)  Thakur informed Defendant Gary Fybel, CEO of Scripps La Jolla, and Defendant Chris Van Gorder, President and CEO of Defendant Scripps Health, about the sham vote, and Fybel and Van Gorder agreed with it.  (*Id.* ¶ 71.)  On April 21, 2009, Julien notified Bribiesca about the partnership dissolution.  (*Id.* ¶ 76.)

/ / /

Eight days later, on April 29, 2009, Bribiesca was at the hospital and started a conversation with Defendant Aimee Dovidio, a hospital security guard. (*Id.* ¶ 77.) He asked her whether she carried pepper spray and how she would handle an aggressive patient. (*Id.* ¶ 78.) She replied that she did not need pepper spray because she had a radio and backup assistance. (*Id.*) The conversation ended shortly thereafter, and Bribiesca proceeded to his next patient. (*Id.* ¶ 79.)

Dovidio informed Defendant Steve Peterson, Director of Security at the hospital, about her conversation with Bribiesca. (*Id.* ¶ 80.) Peterson then spoke to Thakur, who considered the conversation to be inappropriate and decided to immediately evict Bribiesca from hospital property. (*Id.*) Thakur found Bribiesca and began to interrogate him about his conversation with Dovidio. (*Id.* ¶ 82.) Bribiesca was flanked by four security guards that Thakur had brought with her. (*Id.*) Bribiesca cooperated and was confused that anyone would consider his friendly conversation with Dovidio to be threatening. (*Id.*) Thakur informed Bribiesca that she had decided to immediately evict him and that he was not free to return because he was a threat to the hospital. (*Id.* ¶ 83.) Thakur dispatched two security guards to break into Bribiesca's locker and search and seize his property. (*Id.* ¶ 84.) The guards found no weapons or evidence of a crime. (*Id.*)

Surrounded by four security guards under Thakur and Peterson's command, Bribiesca was forced off hospital property. (*Id.* ¶ 85.) Thakur told Julien and Defendant John Spinosa, Chief of Medical Staff at Scripps La Jolla, that Bribiesca had been ejected because he was a threat to the hospital. (*Id.* ¶¶ 86-87.) In early May 2009, Bribiesca received a letter from Scripps La Jolla, signed by Spinosa, stating that his privileges at the hospital had been terminated. (*Id.* ¶ 93.) The letter alleged that the termination was because Bribiesca no longer had a staff physician sponsor. (*Id.* ¶ 93.) However, Bribiesca's sponsor, Defendant Dr. Alexander Giritsky, later testified that he never withdrew his sponsorship. (*Id.* ¶ 94.)

Thakur and Peterson reported Bribiesca's conversation with Dovidio to the San Diego Police and Federal Bureau of Investigation ("FBI"), and in June, two FBI agents

interviewed Bribiesca.  (*Id.* ¶¶ 90-92.)  After the interview, the agents informed him that they saw no evidence of a crime and were closing the investigation.  (*Id.* ¶ 92.)

On June 17, 2009, Bribiesca sued certain present defendants in the Superior Court of California, County of San Diego, for damages arising from the termination of the La Jolla Perfusion partnership and his removal from the hospital (the "State Court Action").[3] (*Id.* ¶ 95.)  Plaintiff's Fourth Amended Complaint was the operative pleading at the time of trial, bringing thirteen (13) causes of action against Defendants Pacific Perfusion, Julien, Colavin, Meenen, Brinkman, and Scripps Memorial Hospital.  (Judgment in State Court Action, Procopio & PPI Notice of Lodgment ("NOL") Ex. 1; Fourth Amended Complaint in State Court Action, Procopio & PPI NOL Ex. 2.)[4]

Procopio represented present Defendants Pacific Perfusion, Julien, and Colavin, despite Procopio and Salter's prior representation of Bribiesca.  (Compl. ¶ 96.) Procopio's lead attorney on the case was Defendant Paul Tyrell, but Salter also participated in the representation against Bribiesca.  (*Id.* ¶ 97.)

Defendant the Honorable Randa Trapp, Judge of the Superior Court, presided over the State Court Action.  (*Id.* ¶ 101.)  Plaintiff contends Judge Trapp improperly granted motions for discovery, for summary judgment, and in limine against him.  (*Id.* ¶¶ 102-

---

[3] The State Court Action was captioned *Juan Bribiesca, et al. v. Pacific Perfusion, Inc., et al.*, San Diego Superior Court Case No. 37-2012-0000091932.

[4] The Procopio and PPI Defendants request that the Court take judicial notice of certain court filings from the State Court Action and its related appeals.  *See* Request for Judicial Notice, ECF No. 15-5; Request for Judicial Notice, ECF No. 34-4.  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States* ex rel. *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) ("While the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not.").  Accordingly, the Court **GRANTS** the requests.

104, 107-109.)  These prejudicial rulings "polluted" the trial.  (*Id.* ¶ 108.)  Plaintiff believes Judge Trapp should have recused herself because she had a conflict of interest favoring Scripps La Jolla.  (*Id.* ¶ 115.)  He contends that Judge Trapp was conflicted because her husband, Defendant Deputy Trapp, "maintained a business relationship with a key defendant in the case, President and CEO of Scripps Health, Mr. Van Gorder."  (*Id.* ¶ 110.)  In support of this allegation of a "business relationship" between Deputy Trapp and Van Gorder, Plaintiff attaches a 2014 article stating that Van Gorder "was recently named reserve assistant sheriff of the San Diego County Sheriff's Department," a volunteer position.  (*Id.* Ex. C.)  Van Gorder had been serving as a volunteer deputy sheriff since 2003.  (*Id.*)  Plaintiff alleges that Van Gorder's volunteer position makes him a "co-worker with Judge Trapp's husband, Deputy Trapp."  (*Id.* ¶ 113.)  Moreover, Plaintiff contends that Judge Trapp was conflicted because deputies from the San Diego Sheriff's Department provide security to Judge Trapp in her courtroom.  (*Id.* ¶ 114.)  Despite this alleged conflict, Judge Trapp did not recuse herself, which Plaintiff alleges deprived him of due process and an impartial tribunal.  (*Id.* ¶¶ 116-117.)

In August 2011, Plaintiff filed a "Motion for Peremptory Challenge and Disqualification," requesting that Judge Trapp recuse herself because she is "prejudiced against Plaintiffs and/or their attorney, or the interests of same, so that the Plaintiffs and/or their attorney cannot, or believe that they cannot, have a fair and impartial trial or hearing before said Judge."  (Motion for Peremptory Challenge and Disqualification, County's Request for Judicial Notice ("RJN") Ex. B.)[5]  Superior Court Judge Ronald S. Prager denied the motion as being untimely.  (Order Denying Motion for Peremptory Challenge and Disqualification, County's RJN Ex. C.)

---

[5] The County Defendants ask the Court to take judicial notice of certain court filings from the State Court Action and its related appeals.  (ECF No. 14.)  The Court **GRANTS** their request.

The case went to trial in August 2012.[6]  (Judgment in State Court Action, Procopio & PPI NOL Ex. 1.)  At the close of evidence, the Court ruled in Defendants' favor on the declaratory relief and breach of contract claims, and the jury returned a verdict in favor of all Defendants on all remaining causes of action.  (*Id.*)  Later, Judge Trapp awarded Pacific Perfusion, Julien, and Colavin $370,850 in attorneys' fees and $11,616.96 in costs, and awarded Scripps $78,861.23 in costs.[7]  (*Id.*)  Plaintiff appealed to the Fourth Appellate District of the California Court of Appeal, which affirmed the judgment in September 2014.  (Opinion of the Fourth Appellate District of the California Court of Appeal dated Sept. 17, 2014, Procopio & PPI NOL Ex. 3.)  He then tried without success

---

[6] Before trial, Plaintiff settled with Defendants Meenen and Brinkman, and they were dismissed with prejudice from the State Court Action.  (*See* Request for Dismissal Signed by Clerk of Superior Court, Brinkman RJN Ex. 1.)

Defendants Meenen and Razorback Perfusion, Inc. and Defendant Brinkman have filed requests for judicial notice.  (ECF Nos. 44-3 & 23-2.)  Each ask the Court to take judicial notice of the Fourth Amended Complaint in the State Court Action; the Settlements and General Release Agreements between Juan Bribiesca and JB Coastal, Inc., on the one hand, and Meenen and Brinkman on the other hand; and the Request for Dismissal of Meenen and Brinkman from the State Court Action.  The Meenen Defendants later refiled the Settlement and General Release Agreement between Bribiesca and Meenen, as they had previously filed Brinkman's agreement.  (ECF No. 40-2.)  Bribiesca objects and moves to strike the two settlement agreements filed by the Meenen Defendants, claiming the agreements to be inauthentic and exhibiting forgery.  The Court **OVERRULES** Plaintiff's objections and **GRANTS** Defendants' requests for judicial notice of the documents.  The Meenen agreement is no different from the Brinkman agreement, and Plaintiff does not object to the authenticity of the Brinkman agreement.  Nowhere does Plaintiff claim that he did not settle with these Defendants or that the terms of the settlements are unenforceable.  The Meenen Defendants made a mistake when they first filed the document, which they corrected in filing their Reply.  This is not evidence of bad faith, as Plaintiff contends, and he is not entitled to costs and attorney's fees for this mistake.

[7] Plaintiff alleges that Procopio is now "reprehensibly attempting to collect" these attorneys' fees from Bribiesca, which were billed "while representing parties adverse to Dr. Bribiesca in the" State Court Action.  (Compl. ¶ 47.)

to petition the California Supreme Court for review.  (Notice of California Supreme Court's denial of Bribiesca's Petition for Review dated Dec. 10, 2014, Procopio & PPI NOL Ex. 4.)

Subsequently, Plaintiff filed documents in state trial and appellate courts seeking to recuse Judge Trapp.  On November 20, 2015, Plaintiff filed a Notice of Appeal concerning Judge Trapp's failure to recuse herself for bias.  (Notice of Appeal, J. Trapp RJN Ex. 6.)[8]  A few days later, on December 2, 2015, Plaintiff filed a document in the Superior Court entitled "Notice to stay pending appeal," in which he alleged that Judge Trapp was prejudiced against him and that he could not have fair and impartial proceedings before her.  (Notice to Stay Pending Appeal, J. Trapp RJN Ex. 4.)  Judge Trapp treated the notice as a Statement of Disqualification filed under California Code of Civil Procedure sections 170.1 and 170.3 and, on December 7, 2015, issued an order striking the document on the basis that it was untimely and failed to state any legal basis for disqualification.  (Order Striking Plaintiff's Statement of Disqualification of Judge Randa Trapp, J. Trapp RJN Ex. 5.)  Later, on February 19, 2016, the Court of Appeal concluded that Plaintiff had not sought review of an appealable order.  (Court of Appeal Docket, J. Trapp RJN Ex. 7.)  The Court of Appeal exercised its discretion to treat the appeal as a petition for writ of mandate and, upon consideration of the state court hearing transcript and Plaintiff's appeal brief, denied the petition.  (*Id.*)

On May 23, 2016, Plaintiff filed the present lawsuit.  Plaintiff now brings RICO claims against the Defendants in the State Court Action, as well as several other people and entities tangentially involved in the underlying events.  He contends that several criminal enterprises exist.  First, he names the "Procopio Criminal Enterprise," which

---

[8] Defendant Judge Trapp requests that the Court take judicial notice of certain court filings from the State Court Action and related appeals.  (ECF No. 10-2.)  The Court **GRANTS** her request.  Additionally, Defendants Kalish and Giritsky seek judicial notice of court records from the State Court Action and related appeals.  (ECF Nos. 11-1, 12-2, 21-3.)  The Court **GRANTS** those requests.

consists of Procopio, Salter, Tyrell, Pacific Perfusion, La Jolla Perfusion, Julien, Colavin, Meenen, Brinkman, and Defendant Jennifer Foes.[9]  (Compl. ¶ 121.)  The purpose of the Procopio Criminal Enterprise is "to act as or on behalf of Dr. Bribiesca despite having conflicts of interest in being adversarial to Dr. Bribiesca in the" State Court Action.  (*Id.* ¶ 122.)

The second criminal enterprise is the "Scripps La Jolla-San Diego County-San Diego County Sheriff's Department Criminal Enterprise" (hereinafter "Scripps-County Criminal Enterprise").  This criminal enterprise consists of Van Gorder, Fybel, Thakur, Defendant Brad Ellis,[10] Defendant Sheriff William D. Gore,[11] Deputy Larry Trapp,[12] Judge Trapp, Scripps La Jolla, Scripps Health, Defendant County of San Diego, and the San Diego County Sheriff's Department.  (*Id.* ¶ 123.)  He contends that the purpose of this enterprise is "to consolidate and protect the interests of Scripps La Jolla and its enterprise members by use of San Diego County Sheriff's Department, its Sheriff, [Defendant] Sheriff Gore, and its numerous deputies, including Mr. Van Gorder, and his subordinates, including Mr. Fybel, Ms. Thakur, Mr. Peterson, and each administrative and medical staff employee, agent, or contractor of Scripps" and "to conspire to cover up the fraudulent and wrongful 'lock out' scheme and kidnapping of Dr. Bribiesca and wrongful usurpation of business opportunities and decades of goodwill established by Dr. Bribiesca."  (*Id.* ¶¶ 124-125.)

---

[9] Defendant Foes worked as a subcontractor at La Jolla Perfusion.  (*Id.* ¶ 29.)  Julien allegedly fabricated a written statement by Foes, which he provided to Thakur.  (*Id.* ¶¶ 66-67.)  The record contains no proof of service as to Foes, and she has not filed a motion to dismiss.

[10] Defendant Ellis serves as in-house counsel at Scripps Health and Scripps La Jolla.  (*Id.* ¶ 10.)  The Complaint contains no factual allegations about Ellis.

[11] Defendant Sheriff Gore is the Sheriff of the San Diego County Sheriff's Department.  (*Id.* ¶ 20.)  There are no allegations about Gore's personal involvement in any of the facts in dispute.  He is only mentioned as the head of the Sheriff's Department.

[12] Deputy Trapp is a Deputy Sheriff in the County of San Diego and Judge Trapp's husband.  (*Id.* ¶ 22.)

Plaintiff also contends that Procopio, Scripps Health, Scripps La Jolla, the County of San Diego, the San Diego County Sheriff's Department, Pacific Perfusion, La Jolla Perfusion, and Defendant Razorback Perfusion, Inc.[13] constitute enterprises.

Plaintiff alleges ten claims for relief. His RICO claims are based on the predicate acts of mail fraud, wire fraud, honest services fraud, kidnapping, and extortion. The Complaint does not specify how the Defendants committed mail, wire, or honest services fraud, but instead merely sets forth boilerplate pleading with a formulaic recitation of some of the elements of the claims for relief. It appears that the kidnapping allegation relates to the events at Scripps La Jolla when Thakur questioned Bribiesca and removed him from the hospital. The extortion allegation relates to the Procopio Criminal Enterprise's attempts to collect attorneys' fees and costs from Bribiesca, fees and costs that were billed and awarded by the state courts despite Procopio's alleged conflict of interest.

He seeks damages arising from lost profits and/or lost business opportunities as a result of Defendants' conduct and an order dissolving each identified enterprise. (*Id.* ¶¶ 186, 189.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins., Co.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(1), a jurisdictional attack may be either "facial" or "factual." *Thornhill Publishing Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal

---

[13] Defendant Meenen is the President of Defendant Razorback Perfusion, Inc. (*Id.* ¶¶ 27, 30.) The Complaint contains no factual allegations about Razorback Perfusion.

jurisdiction appears from the face of the pleading itself.  *Id.*  In a factual attack, the "defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In considering a factual attack, the "court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment."  *White v. Lee*, 227 F.3d 1213, 1242 (9th Cir. 2000).  The court "need not presume the truthfulness of the plaintiff's allegations."  *Id.*  Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.  *Safe Air for Everyone*, 373 F.3d at 1039.

## DISCUSSION

Plaintiff's Complaint contains rambling allegations of an implausible conspiracy and the wrongs done to him by the twenty-seven Defendants.  His Complaint is replete with pleading deficiencies and fatal legal flaws.  He has sued defendants he has alleged no facts regarding, he has sued defendants immune from suit, and he fails to state non-conclusory facts to support his claims, among other problems.  Having failed to win in state court in an action based on the same underlying facts, Plaintiff now alleges a vast conspiracy against him, unsupported by facts.  Plaintiff's Complaint is an improper attempt to relitigate issues he lost on in the State Court Action.  Accordingly, this Court lacks subject matter jurisdiction to hear such a de facto appeal.  Because the Court concludes it lacks jurisdiction, it need not address the other arguments raised by Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

I.     **This Court Lacks Subject Matter Jurisdiction**

  **A. The *Rooker-Feldman* Doctrine**

   The *Rooker-Feldman* doctrine[14] prevents federal district courts from exercising subject matter jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over de facto appeals. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).

   Once a federal plaintiff seeks to bring a forbidden de facto appeal, the federal plaintiff may not seek to litigate an issue that is "inextricably intertwined" with the state court judicial decision from which the de facto appeal is brought. *Id.* at 1158. "[C]laims raised in the federal court action are 'inextricably intertwined' with the state court's decision" when "adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 898 (9th Cir. 2003); *see also Cooper*, 704 F.3d at 779 ("[W]e have found claims inextricably intertwined where the relief requested in the federal action would effectively reverse state court decision or void its ruling."). Under such circumstances, "the federal complaint must be dismissed for lack of subject matter jurisdiction." *Bianchi*, 334 F.3d at 898.

---

[14] The *Rooker-Feldman* doctrines takes its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

**B. Application of *Rooker-Feldman***

Plaintiff has brought a forbidden de facto appeal and claims that are "inextricably intertwined" with the state court's judgment. He seeks a federal court "win" on the same issues that he already lost on in state court. The *Rooker-Feldman* bars such claims.

Plaintiff's claims against Judge Trapp are a "pure horizontal appeal of the state court's decision." *Cooper*, 704 F.3d at 779. Both of the elements of a de facto appeal are present. First, it is clear that Plaintiff "complains of a legal wrong allegedly committed by the state court." *Noel*, 341 F.3d at 1163. Throughout his Complaint, Plaintiff explicitly attacks Judge Trapp's rulings, contending, for example, that she "granted many of [Defendants'] motions improperly," "inexplicably denied [Plaintiff's] motion in limine, . . . depriving [Plaintiff] of an ability to call . . . a witness at trial, placing highly-relevant, corroborative testimony out of reach of [Plaintiff]," "inexplicably denied [Plaintiff's] motion in limine despite the clear-inadmissibility of . . . 'statements' and unavailability of [a witness] for cross-examination" and granted Defendants' motions in limine that "impacted [Plaintiff's] opportunity to present evidence which would have greatly improved his chances to prevail at trial." (Compl. ¶¶ 102, 107, 109.) Plaintiff pleads that, because of these improper rulings, "the trial was polluted by oceans of highly prejudicial double and triple hearsay, rumor, innuendo, and inauthentic 'evidence' at trial. Such highly-irregular evidentiary decisions greatly prejudiced [Plaintiff's] case before the jury, leading to an unfavorable outcome." (*Id.* ¶ 108.) He alleges that Judge Trapp was conflicted and should have recused herself, but did not, instead "making the biased rulings . . . , depriving [Plaintiff] of due process and impartial tribunal." (*Id.* ¶¶ 116, 117.) At heart, Plaintiff's claimed injury is that he was denied an impartial trial because of Judge Trapp's, as well as Procopio's, conflicts of interest. (*See* Corr. Comb. Opp'n at 15 (admitting that the Complaint is "focused primarily on (1) Procopio, Salter, and Tyrell's breach of fiduciary duty based on the plain conflict of interest in representing a party adverse to their own client, and (2) Judge Trapp's similar breach of fiduciary duty and deprivation of due process by presiding over a trial in which her husband's

employer—the County/Sheriff's Department—was closely integrated with to [sic] a party-defendant—Van Gorder/Scripps."))

Second, Plaintiff seeks relief from the state court judgment. *Noel*, 341 F.3d at 1163. In the State Court Action, Plaintiff sought damages for past and future lost earnings. (Procopio & PPI NOL, Ex. 2.) But, he was denied all relief and ordered to pay attorneys' fees and costs to the prevailing defendants. Here, Plaintiff seeks to escape those obligations and to overturn the state court judgment. He asks this Court to review the same facts litigated in the State Court Action and to award him damages "arising from lost profits and/or lost business opportunities attributable to the activities engaged in by defendants." (Compl. ¶ 186.) His RICO claim based on extortion is aimed at avoiding paying the attorneys' fees and costs awarded in the State Court Action.

Plaintiff's remaining claims against the other Defendants are inextricably intertwined with the state court's decision. Plaintiff alleges, based on Judge Trapp's conflict involving Scripps and the Sheriff's Department that allegedly prejudiced her against him, that the Scripps-County Criminal Enterprise[15] "conspired to cover up the fraudulent and wrongful 'lock out' scheme and kidnapping of [Plaintiff] and wrongful usurpation of business opportunities." (Compl. ¶ 125.) However, the state courts have already decided the issues underlying the claims against the Scripps-County Enterprise. Plaintiff has twice sought to recuse Judge Trapp based on allegations of bias towards him, and both attempts have been unsuccessful. Further, the state courts ruled against Plaintiff on the issues that he alleges are at the heart of the enterprise: the lock-out scheme, kidnapping, and usurpation of business opportunities. Plaintiff's first, second, third, fourth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth claims in the State Court Action were based on the lock-out scheme. (Procopio & PPI NOL, Ex. 2.)

---

[15] As a reminder, the Scripps-County Criminal Enterprise consists of Defendants Van Gorder, Fybel, Thakur, Ellis, Gore, Deputy Trapp, Judge Trapp, Scripps La Jolla, Scripps Health, County of San Diego, and non-defendant San Diego County Sheriff's Department. (Compl. ¶ 123.)

Plaintiff admits that the lock out scheme allegations proceeded to trial in the State Court Action. (Compl. ¶ 104.) The kidnapping allegation also arose in the State Court Action. The trial court denied Plaintiff leave to amend to add a false imprisonment claim,[16] and the Court of Appeal affirmed that decision. (Procopio & PPI NOL, Ex. 3.) Finally, Plaintiff's allegation of usurped business opportunities (*i.e.,* his lost contract with Scripps La Jolla) was litigated in the eleventh and twelfth claims in the State Court Action. (Procopio & PPI NOL, Ex. 2.) As noted, Plaintiff lost on all claims in the State Court Action and the judgment was affirmed by the Court of Appeal. To credit Plaintiff's new RICO claims based on the same allegations litigated and rejected by state trial and appellate courts is just another way of saying that "the state court wrongly decided the issues before it." *Cooper*, 704 F.3d at 783 (quoting other case).

The claims related to the Procopio Criminal Enterprise[17] are also inextricably intertwined with the Superior Court's decisions. The Procopio Criminal Enterprise is based on Procopio's alleged conflicts of interest. (Compl. ¶ 122.) But Plaintiff alleges no injury from this conflict beyond his loss at trial and attendant court-ordered obligation to pay attorneys' fees and costs. To consider the RICO claims against the Procopio Criminal Enterprise and assess Plaintiff's injury, the Court would have to revisit and reverse Judge Trapp's rulings on pre-trial and post-trial motions and at trial. Accordingly, the RICO claims are inextricably intertwined with the merits of the state court's decision and are effectively a prohibited appeal of the state court judgment.

---

[16] Under California law, the proper civil claim for relief for "kidnapping" is the tort claim for false imprisonment. *Chipman v. Nelson*, No. 2:11-cv-2770, 2013 WL 1007285, at *17 n.8 (E.D. Cal. Mar. 13, 2013.)

[17] The Procopio Criminal Enterprise consists of Procopio, Salter, Tyrell, Pacific Perfusion, La Jolla Perfusion, Julien, Colavin, Meenen, Brinkman, and Foes. (Compl. ¶ 121.) Notably, the Enterprise includes non-attorneys and Defendants who played no role in Procopio's representation of the PPI Defendants. Nowhere does Plaintiff explain how such individuals could plausibly have participated in such an enterprise, the purpose of which was "to act as or on behalf of Dr. Bribiesca despite having conflicts of interest in being adversarial to Dr. Bribiesca" in the State Court Action. (*Id.* 122.)

17

Perhaps realizing that the *Rooker-Feldman* doctrine bars the review he seeks, Plaintiff relies on *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), and argues that *Rooker-Feldman* is inapplicable because he asserts new claims based on extrinsic fraud. *Kougasian* explained that *Rooker-Feldman* bars subject matter jurisdiction when "a federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." 359 F.3d at 1140 (emphasis in original). In *Kougasian*, the Ninth Circuit held that *Rooker-Feldman* did not apply because the plaintiff did not allege that she had been harmed by legal errors made by the state court. *See id.* at 1140-41. Rather, the plaintiff alleged extrinsic fraud on the state court—specifically, defendants submitted a false declaration in state court and refused to supply contact information for the declarant, preventing plaintiff from challenging the declaration, and the court based its judgment on the declaration. *See id.* at 1138-39. The Ninth Circuit explained that "[e]xtrinsic fraud is conduct which prevents a party from presenting his claim in court." *Id.* at 1140. With regard to the *Rooker-Feldman* doctrine, the court reasoned that a "plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Id.* at 1140-41.

Despite Plaintiff's protests, *Kougasian* is consistent with the Court's conclusion that it lacks jurisdiction. In this case, unlike in *Kougasian*, Plaintiff claims injury from errors committed by the state court and seeks relief from that judgment. That is, Bribiesca brings a de facto appeal, unlike the plaintiff in *Kougasian.* Thus, *Kougasian* is inapposite.

Moreover, Plaintiff has not stated any claim for extrinsic fraud. Plaintiff alleges extrinsic fraud based on Procopio and Judge Trapp's conflicts. (Comb. Corr. Opp'n at 15.) As noted, "[e]xtrinsic fraud is conduct which prevents a party from presenting his claim in court." *Kougasian*, 359 F.3d at 1140. The "essential characteristic" of extrinsic fraud is that the "successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain

from appearing in court or asserting legal rights" or "from fully participating in the proceeding." *Gibble v. Car-Lene Research, Inc.,* 67 Cal. App. 4th 295, 314 (1998) (citation omitted). "Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed)." *Id.* at 315 (citation omitted). "On the other hand, [f]raud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so." *Id.* (citation omitted).

Here, Plaintiff fully participated in the proceedings in the state courts. He fails to state that he was prevented from presenting any claims or defenses in the State Court Action because of the alleged conflicts of Judge Trapp and Procopio. By Plaintiff's own allegations, he was aware that Procopio was adverse to him during the State Court Action, yet he did nothing to question or contest its representation of certain Defendants. At most, he raises issues of intrinsic fraud.[18]  As to Judge Trapp's alleged conflict, Plaintiff *did* seek to recuse her for being prejudiced against him, but failed. When extrinsic fraud allegations are separately litigated in state court, the extrinsic fraud exception to the *Rooker-Feldman* doctrine does not apply. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008).

Plaintiff also seeks to avoid *Rooker-Feldman* by arguing that the state court judgment was void due to Judge Trapp's undisclosed conflict. He cites noncontrolling authority in support of his argument that void judgments are not subject to the *Rooker-Feldman* doctrine. Plaintiff is wrong. "*Rooker–Feldman* applies [even] where the

_____

[18] Even if Plaintiff raises plausible issues of a conflict of interest involving Procopio—which this Court does not decide—the proper avenue to make such allegations is a state court claim, not a federal RICO claim.

plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment." *Doe v. Mann,* 415 F.3d 1038, 1042 (9th Cir. 2005); *see Fletcher v. Gilbert,* 262 F. App'x 791, 791 (9th Cir. 2007) (rejecting plaintiff's argument that "the *Rooker–Feldman* doctrine should not apply because the state court lacked subject matter jurisdiction and rendered a void judgment").

Finally, Plaintiff argues that his new federal RICO claims, unlitigated state law claims, and attorney misconduct claims are not subject to *Rooker-Feldman*.  They are.  All of Plaintiff's claims are barred because they are inextricably intertwined with his de facto appeal of the state court's judgment.[19]

Artful pleading will not save Plaintiff's federal complaint.  However Plaintiff attempts to characterize his claims now, the Complaint and history of the State Court Action make clear that his Complaint is grounded on claims of legal error with which he disagrees.  This Court could not rule on any of Plaintiff's RICO claims without implicitly overruling Judge Trapp, the state court jury, and the California Court of Appeal.[20]  Plaintiff has not carried his burden to demonstrate this Court has subject matter jurisdiction.  Therefore, the entire action is dismissed.

## CONCLUSION

The Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  Accordingly, the Court **GRANTS** Defendants' motions to dismiss and **DISMISSES** the

---

[19] Additionally, the unlitigated state law claim that Plaintiff raises—one for kidnapping—was litigated in the State Court Action.  The Superior Court denied Plaintiff leave to amend to add a claim for false imprisonment, and the Court of Appeal affirmed that decision.

[20] Unsurprisingly, other plaintiffs have brought RICO claims in federal court, alleging that defendants defrauded them in state court.  Federal courts have held that those RICO claims are barred by the *Rooker-Feldman* doctrine.  *See, e.g.*, *McDowell v. California*, No. C 11-02569 CRB, 2011 WL 6141045, at *3-4 (N.D. Cal. Dec. 9, 2011) ("RICO claims constitute a *de facto* appeal of state court decision and are barred by the *Rooker-Feldman* doctrine."); *Bounds v. Wells Fargo Bank Minnesota*, No. 02 C 9010, 2003 WL 21466939, at *2-3 (N.D. Ill. June 25, 2003).

action.  (ECF Nos. 5, 10, 11, 13, 15, 21, 23, and 44.)  The Court **DENIES** Defendant Kalish's request for attorneys' fees under his anti-SLAPP motion to strike (ECF No. 12) because it lacks jurisdiction to consider the issue.  *See Stahl Law Firm v. Judicate West*, No. C13-1668 TEH, 2013 WL 6200245, at *7 (N.D. Cal. Nov. 27, 2013) (denying defendants' motions for prevailing party anti-SLAPP attorneys' fees because court lacked subject matter jurisdiction).  The Court **OVERRULES** and **DENIES** Plaintiff's Objections and Motion to Strike Exhibits to Meenen Defendants' Motion to Dismiss and Reply.  (ECF No. 43.)

     **IT IS SO ORDERED.**

Dated:  January 10, 2017

Hon. Roger T. Benitez
United States District Judge

21